# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-794

KENNETH M. CARPENTER, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 17, 2001                    Decided  June 21, 2001   )

*Michael E. Wildhaber,* of Washington, DC, for the appellant.

*Edward V. Cassidy*, with whom *Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Michael A. Leonard*, Deputy Assistant General Counsel, were on the brief, all of Washington, DC, for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, *Judges*.

FARLEY, *Judge*, filed the opinion of the Court.  STEINBERG, *Judge*, filed an opinion concurring in part and dissenting in part.  KRAMER, *Chief Judge*, filed a dissenting opinion.

FARLEY, *Judge*: This is an appeal from the April 6, 1999, decision of the Board of Veterans' Appeals (BVA or Board) which found that the total attorney fees charged by the appellant, attorney Kenneth M. Carpenter, for his representation of veteran Victor S. Weatherspoon, were "excessive and unreasonable."  The BVA reduced the appellant's fee to 20% of the past-due benefits awarded to his client. The Board also concluded that the appellant was legally bound to refund to Mr. Weatherspoon the fees awarded to him pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  For the reasons that follow, the Court will affirm the decision of the Board in part and reverse in part.

## I. BACKGROUND

The veteran served on active duty in the United States Army from July 1979 to September 1980. Record (R.) at 13. VA denied his claim for service connection for a nervous disorder in May 1981. R. at 35. In February 1993, Mr. Weatherspoon sought to reopen his service connection claim. R. at 79. In February 1994, he filed a VA Form 22a with the regional office (RO) appointing the appellant, Kenneth M. Carpenter, as his representative. R. at 46. The RO awarded the veteran service connection for bipolar affective disorder with chronic undifferentiated schizophrenia in May 1994, effective from February 12, 1993. R. at 79.

In February 1995, the appellant filed, on behalf of the veteran, a claim for an earlier effective date for his service connection award on the basis of clear and unmistakable error (CUE) in the March 1981 RO decision. R. at 49-51. In April 1995, the RO determined that there was no CUE in the May 1981 RO decision and the Board affirmed. R. at 53-56, 76-86.

On May 1, 1997, the appellant filed a Notice of Appeal with this Court on behalf of the veteran. On the same date he filed with the Court a copy of a fee agreement entered into between him and the veteran. The agreement provided in pertinent part:

> 2. SCOPE AND DUTIES. Client [the veteran] hires Attorney [the appellant] to provide legal services in connection with appeal to U.S. Court of Veterans Appeals [now the U.S. Court of Appeals for Veterans Claims (Court)]. Attorney shall provide the following services: All services necessary to prosecute appeal to the [Court]. As a result of a decision by the [Court], the veteran's case may be remanded and the Board of Veterans' Appeals previous decision vacated. In the event of a court-ordered remand this agreement shall include representation of the veteran by the Attorney at both the Board of Veterans' Appeals as well as any Regional Office of the Department of Veterans Affairs. . . .

> 3. CONTINGENT FEE (DEPARTMENT OF VETERANS AFFAIRS CASES). Client agrees to pay a fee equal to thirty percent (30%) of the total amount of any past-due benefits awarded to Client, to include veteran, dependent or survivor benefits; on the basis of the Client's claim with the Department of Veterans Affairs. . . . This representation is undertaken upon the following conditions:
> . . . .
>     c.    The services contemplated under this contract before the [Court], Federal Circuit Court of Appeals, Board of Veterans'

> Appeals, or Department of Veterans affairs Regional Office relate specifically to the claim or claims previously decided by the Board of Veterans' Appeals.
> . . . .

> 4. EQUAL ACCESS TO JUSTICE ACT (EAJA) FEES. It is understood that in actions before the [Court], an application for attorney fees, costs and expenses may be filed on behalf of Client under EAJA in order to reimburse Client for attorney fees, costs and expenses which were required to be paid to protect Client from unreasonable governmental action. The recovery of reasonable attorney fees, costs and expenses for work performed on behalf of Client at the Court may be ordered. In the event of such Court-ordered award, such attorney fees, costs and expenses shall be payable directly to Attorney. It is understood and agreed that any attorney fees awarded under EAJA shall be the sole and exclusive property and entitlement of Attorney, for the services rendered to the Client for representation before the Court. . . . Attorney agrees that in the event the Court grants an award of benefits, if there is ultimate successful recovery of past-due benefits for Client, an offset will be made against the entitlement paid under the Attorney/Client Contingent Fee Contract of Attorney's percentage of past-due benefits, in the amount of the sum of the attorney fees awarded by the Court under the provisions of EAJA. Client agrees that in the event the Court remands veteran's case, no offset will be made against the entitlement paid under the Attorney/Client Contingent Fee Contract of Attorney's percentage of past-due benefits in the amount of the sum of the attorney fees awarded by the Court under the provisions of EAJA, if there is ultimate successful recovery of past-due benefits for Client.

R. at 89-90.

By letter dated May 1, 1997, the appellant also sent a copy of this fee agreement to the Board. The appellant's letter stated that the fee agreement was being submitted to the Board "in the event of a remand from the [Court]." R. at 88. On July 3, 1997, the Deputy Chief Counsel for Legal Affairs of the BVA, by direction of the Chairman of the BVA, sent a letter to the appellant acknowledging receipt of the fee agreement. R. at 96. The letter also stated:

> As we have previously discussed with you, paragraph 4 of your agreement, relating to fees under the [EAJA], appears to provide that fees awarded under EAJA will not be offset against your client's fees if the [Court] remands Mr. Weatherspoon's case and past-due benefits are awarded. This provision appears to be in violation of § 506(c) of Pub. L. No. 102-572 (Oct. 29, 1992), which provides that, when an attorney receives fees for the same work under both 28 U.S.C. § 2412(d) and 38 U.S.C. § 5904, the attorney shall refund the smaller amount to the client. The law does not appear to provide an exception where a case is remanded from the Court.

3

If you receive an EAJA fee and your client is awarded past-due benefits, we will take appropriate steps to review your fee agreement for reasonableness.

*Id*.

In February 1998, the Court granted the parties' joint motion for remand of the veteran's claim for an earlier effective date. R. at 110. On May 8, 1998, the Court awarded the veteran $2,473.17 in attorney fees and expenses pursuant to EAJA. *See* R. at 137. In August 1998, the Board found that there was CUE in the May 6, 1981, RO decision and awarded the veteran an effective date of January 20, 1981, for his service-connected psychosis. R. at 116-26. In September 1998, the RO implemented the Board's decision and awarded the appellant $206,017.00 in past-due benefits. R. at 128-29, 141-42.

In a letter dated November 17, 1998, the Office of the Chairman of the BVA notified the appellant that because his fee agreement did not provide that his contingent fee be offset by the EAJA award, the Board was being directed to review his fee agreement for reasonableness pursuant to 38 U.S.C. § 5904(c)(2). The appellant filed a response in which he argued that the Board had no jurisdiction to review his fee agreement pursuant to 38 U.S.C. § 5904(c) and that, even if the Board did have jurisdiction, his fee, including the retention of the EAJA award, was reasonable. R. at 146-48. The appellant also argued that "the work performed by [his] office to secure the joint remand [was] entirely separate and apart from the work performed at the Board on remand." R. at 147. Thus, the appellant argued, "The work performed at the [BVA] is not, and cannot as a matter of law, be considered the same work as performed before the Court." R. at 148. The appellant also submitted a letter from the veteran stating that he considered the appellant's fee to be fair, just, and reasonable under the circumstances. R. at 144.

In the BVA decision here on appeal, the Board found that the 30% contingency fee charged by the appellant was excessive and unreasonable and therefore reduced the appellant's fee to 20% of past-due benefits. The Board also found that the appellant's retention of the EAJA fee awarded to the veteran for attorney fees for work performed before this Court, in addition to collecting the contingency fee, was unreasonable.

4

## II. JURISDICTIONAL ISSUES

The appellant proposes several different theories in arguing that the Board's decision should be vacated because the Board lacked jurisdiction to review his fee agreement. First, he contends that the fee agreement reviewed by the Board was initiated pursuant to 38 U.S.C. § 7263 which pertains to representation before the Court, rather than § 5904(c) which addresses representation before the Board and VA. Accordingly, he argues that the fee agreement is controlled by § 7263, and the Board, therefore, did not have jurisdiction to review it pursuant to § 5904(c). Second, the appellant urges that since the Court granted the parties' joint motion for remand and awarded EAJA fees, the Court presumably reviewed the fee agreement for reasonableness pursuant to § 7263 and, through its silence, implicitly decreed the agreement reasonable. The appellant contends that this implicit conclusion is "the law of the case." Finally, the appellant argues that even if the Board had the authority to review the fee agreement for reasonableness pursuant to § 5904(c)(2), the Board exceeded that authority by considering his "eligibility" for a fee when it determined that he must return the EAJA fee awarded by the Court to the veteran.

### A. Section 5904(c) and Section 7263

Section 5904(c) of title 38, U.S. Code provides, in pertinent part:

(2)     A person who, acting as agent or attorney in a case referred to in paragraph (1) of this subsection, represents an appellant before the Department or the Board of Veterans' Appeals after the Board first makes a final decision in the case shall file a copy of any fee agreement between them with the Board at such time as may be specified by the Board. The Board, upon its own motion or the request of either party, may review such fee agreement and may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable. A finding or order of the Board under the preceding sentence may be reviewed by the United States Court of Appeals for Veterans Claims under section 7263(d) of this title.

Section 7263 of title 38, U.S. Code provides, in pertinent part:

(c)     A person who represents an appellant before the Court shall file a copy of any fee agreement between the appellant and that person with the Court at the time the appeal is filed. The Court, on its own motion or on the motion of any party, may review such fee agreement.

(d)     In reviewing a fee agreement under subsection (c) of this section or under section 5904(c)(2) of this title, the Court may affirm the finding of the Board and

5

may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable.

The fee agreement at issue in this matter was entered into after the Board made a final decision in the veteran's case and was filed with this Court at the time the appeal was filed. The agreement not only addressed representation before this Court, but also specifically provided for representation before the Board and the Department of Veterans Affairs in the event this Court remanded the veteran's claim. In contemplation of that possibility, the appellant filed a copy of the fee agreement with the Board on the same date he filed the agreement with the Court, "in the event of a remand from the [Court]." R. at 88. By filing this one fee agreement with the Court and the Board, the appellant complied with the requirements of both § 5904(c) and § 7263(c). Because the fee agreement filed with the Board satisfied the requirements of § 5904(c), the Board had the authority to review the fee agreement pursuant to that subsection.

The fact that this Court had the opportunity to review the fee agreement pursuant to § 7263 is not a bar to the Board's review of the agreement. Section 7263 authorizes the Court, on its own motion or on the motion of any party, to review a fee agreement filed with the Court; it does not require us to do so. *See* 38 U.S.C. § 7263(c) (The Court . . . *may* review such fee agreement.") (emphasis added); *see also Lewis v. Brown*, 5 Vet.App. 151, 154 ("[T]he Court will not ordinarily review sua sponte every fee agreement."). Neither party made such a motion, and the Court did not undertake a review on its own. The Court agrees that had the Court reviewed the fee agreement as it pertained to work before this Court pursuant to § 7263(d), the Board would have been precluded from reviewing at least that portion of the fee agreement. *Cf. Smith v. Brown*, 35 F.3d 1516, 1526 (Fed. Cir. 1994) (declining to interpret a regulation in such a way that would, "oddly, permit an inferior to collaterally review the actions of a superior."). However, the Court's silence on the reasonableness of the fee agreement cannot be said to be an implicit holding that the agreement was, in fact, reasonable and the Board was free to review the agreement properly before it pursuant to 38 U.S.C. § 5904(c).

Additionally, the Board was free to review the *entire* fee agreement properly before it, and was not required to limit its review to only that portion that pertained to work before the BVA. Section 5904(c)(2) requires that an attorney representing a claimant before the Board or VA file a

6

copy of his or her fee agreement with the Board. The statute further authorizes the Board to review "such agreement" for reasonableness. Such fee agreements will often encompass work performed before the Board, VA, and the Court (as was the case with this fee agreement). We find nothing in the language of § 5904(c) or § 7263 to require the Board to dissect a fee agreement to review only that portion pertaining to work performed before the Board or to so limit the Board's scope of review. In fact, when read together, these two sections operate to ensure that if the Court does not first review a fee agreement, the Board may review the agreement upon a remand of the claim, and that decision will be subject to de novo review by this Court. *See* 38 U.S.C. §§ 5904(c), 7252, 7263(d); *In re Vernon*, 8 Vet.App. 457, 459 (1996) ("[I]n conducting a review of a fee agreement, a finding by the Board regarding the excessiveness or unreasonableness of the fee is entitled to no deference."); *see also* 38 C.F.R. § 20.609(i) (a reduction in fees may be ordered by the Board even after payment has been made to the attorney; in such a case, the attorney must refund any overpayment to the client).

### B. Reasonableness vs. Eligibility

The appellant contends that, even if the Board did have jurisdiction to review this fee agreement pursuant to § 5904(c), the Board exceeded its jurisdiction because it considered not only the *reasonableness* of his fee but also his *eligibility* to collect a fee. In *Scates v. Gober*, this Court held that "all issues involving entitlement or eligibility for attorney fees under *direct-payment* contingency-fee agreements, as contrasted with the issues of reasonableness and excessiveness, must first be addressed by the RO in accordance with the normal adjudication procedures." 14 Vet.App. 62, 64 (2000) (en banc) (emphasis added). The appellant urges this Court to extend our holding in *Scates* to *non-direct-payment* contingency-fee agreements, like the one at issue in this matter.

As the appellant points out, the jurisdiction of the Board and the Court to review fee agreements pursuant to §§ 5904(c) and 7263 is narrow. *See, e.g., Cox v. West*, 149 F.3d 1360, 1364 (Fed. Cir. 1998) ("By its terms, section 5904(c)(2) only gives the Board limited jurisdiction to review the *reasonableness* of a fee and to reduce the fee."); *In re Wick*, 40 F.3d 367, 371 (Fed. Cir. 1994) ("[T]he court's review of fee agreements under § 7263 is strictly limited by the language of the statute. . . . [T]he court is authorized only to 'order a reduction in the fee called for if it finds the fee is excessive or unreasonable.'"); *Scates, supra*. In *Cox, Wick*, and *Scates*, this Court and the U.S.

7

Court of Appeals for the Federal Circuit held that, because the reasonableness of the fee charged by each attorney was not at issue, neither § 5904(c) nor § 7263 could serve as a jurisdictional basis for the Board or the Court's review of the fee agreements. In each of those cases, the issue presented was the attorney's eligibility to collect a fee.

An attorney can be *eligible* to collect a fee pursuant to a fee agreement and still pursue an award of statutory fees on his client's behalf. *See Venegas v. Mitchell*, 495 U.S. 82, 86-87 (1990) (the attorney fee provision of the Civil Rights Act, 42 U.S.C. § 1988, does not preclude attorneys from contracting with their clients for fees in addition to the amount awarded by the court). However, this Court has found that fee agreements which do not provide for an offset of attorney fees paid by the veteran by the amount of any EAJA award for the same work are *unreasonable*. *Shaw v. Gober*, 10 Vet.App. 498, 505 (1997) (holding that a fee agreement was "'unreasonable' on its face to the extent that it may be read as precluding an offset where the Court remands with a direction that the BVA award benefits that the Court finds are required as a matter of law"); *see also In re Mason*, 11 Vet.App. 514, 516 (1998) (Court found"'unreasonable' on its face" a fee agreement provision precluding reimbursement of costs and expenses to client when EAJA settlement is less than the full amount); *Wingo v. West*, 11 Vet.App. 307, 312-13 (1998) (same). The Board did not find that the attorney was *ineligible* to collect a fee pursuant to his fee agreement or EAJA, but considered instead whether the portion of the fee agreement which provided for the attorney's retention of both fees was *unreasonable*. Accordingly, the Board's review of the fee agreement in this matter did not exceed its jurisdiction to review the fee agreement for reasonableness pursuant to § 5904(c), and therefore we find no occasion to consider the appellant's request for an extension of *Scates*.

### C. The Jurisdiction of the Court

The jurisdiction of the Court of [Appeals for Veterans Claims] is specifically defined by statute at 38 U.S.C. § 7252, in a provision entitled "Jurisdiction; finality of decisions." That provision states: "The Court of [Appeals for Veterans Claims] shall have exclusive jurisdiction to review *decisions of the Board of Veterans' Appeals* . . . . The Court *shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter*, as appropriate." 38 U.S.C. § 7252 (emphasis supplied). In determining the jurisdiction conferred by § 7252, we are mindful that "[j]urisdictional statutes are to be construed 'with precision and with fidelity to the terms by which Congress has expressed its wishes'." *Palmore v. United States*, 411 U.S. 389, 396,

93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)).

*In re Wick*, 40 F.3d at 370; *see also* 38 U.S.C. § 7261 (defining the Court's scope of review). In addition, Congress authorized this Court to "'review' fee agreements between an appellant and a person representing the appellant before the [C]ourt when an appeal is properly before the [C]ourt and when a copy of the fee agreement has been filed with the [C]ourt at the time the appeal is filed." *In re Wick*, 40 F.3d at 371; 38 U.S.C. § 7263. In such instances, § 7263(d) gives the Court the additional authority to "affirm the finding of the Board and . . . order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable."

"[F]ee agreements are properly before the court . . . when it reviews decisions of the Board concerning an agreement or on any other matter decided by the Board." *In re Wick*, 40 F.3d at 371. Before this Court is an April 6, 1999, decision of the Board regarding the reasonableness of the fee called for in a fee agreement between the appellant and the veteran. That decision was appealed to this Court by the appellant. Thus, this Court has jurisdiction over the April 6, 1999, BVA decision pursuant to 38 U.S.C. § 7252 and the fee agreement between the appellant and his client is "properly before the [C]ourt" for our review. *Id*.

### III. THE REASONABLENESS OF NO OFFSET FOR EAJA FEES

The fee agreement at issue in this matter stated that in the event the Court ordered an award of benefits, the attorney's fee would be offset by any fees awarded to the veteran pursuant to EAJA. However, if the Court remanded the claim, the agreement stated that no such offset would be made. Since the veteran's claim was indeed remanded, pursuant to the fee agreement no offset of the fee was to be made.

Relying upon section 506(c) of the Federal Courts Administration Act of 1992 (FCAA), the Board found that when an attorney receives fees for the same work under both 38 U.S.C. § 5904 and EAJA, the attorney must refund the smaller fee to his or her client. *See* Pub. L. No. 102-572, 106 Stat. 4506 (Although "[s]ection 5904(d) of title 38, United States Code, shall not prevent an award of fees under [EAJA], . . . where a claimant's attorney receives fees for the same work under both section 5904 . . . and [EAJA] the claimant's attorney refunds to the claimant the amount of the

9

smaller fee.). Therefore, the Board concluded that the appellant must refund to the veteran the EAJA fee awarded by the Court.

Although the applicability of § 506(c) of the FCAA is "doubtful" with respect to a fee agreement reviewed pursuant to §5904(c), as opposed to § 5904(d), which is specifically mentioned in § 506(c),

> the policy underlying the proscription in section 506 against double payment for the same legal work is inherent in the policy against an 'unreasonable' fee embodied in sections 5904(c)(2) and 7263(d) and thus would be enforceable by the Court through a finding that a fee-agreement provision providing for such double payment is unreasonable.

*Shaw v. Gober*, 10 Vet.App. 498, 503-04 (1997). Therefore, while the Board's direct reliance upon § 506(c) of the FCAA may have been error, this Court has held that the collection of double payments for the same work would be unreasonable and a fee agreement permitting such a collection would be unenforceable. *See id*.

> [E]ven if section 506 does not apply to a fee agreement, such as is involved in this case, that does not provide, under section 5904(d), for direct payment by the Secretary of a contingent fee of 20% or less of past-due VA benefits, the policy underlying the proscription in section 506 against double payment for the same legal work is inherent in the policy against an "unreasonable" fee embodied in sections 5904(c)(2) and 7263(d) and thus would be enforceable by the Court through a finding that a fee-agreement provision providing for such double payment is unreasonable under 38 U.S.C. § 7263(d). That policy is divined from the legislative history of section 206 of Pub. L. No. 96-481, 94 Stat. 2321, 2330 (1980), as amended by Pub. L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) (found at 28 U.S.C. § 2412 note) relating to the Social Security Act (SSA) [hereinafter section 206 relating to SSA]. That SSA provision contains language that essentially mirrors that found in FCAA § 506(c). The legislative history of section 206 relating to SSA explained: "Without this amendment [precluding an attorney for a Social Security or Supplemental Security Income (SSI) claimant from receiving both EAJA and SSA fees] it was argued, 'double dipping' was possible. Such double payments are inappropriate and deprive[ ] the plaintiff of the benefits intended by EAJA." H.R. REP. NO. 99-120, pt. 1, at 148-49 (1985) (EAJA Extension and Amendment) (Section-by-Section Analysis describing section 3 of H.R. 2378, which was identical to provision ultimately enacted in Pub. L. No. 99-80); *see Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir. 1988) ("Congress clearly intended the two statutes to work in conjunction and that dual fee applications [under the SSA and EAJA] are not improper as long as the lesser of any two amounts awarded goes to the attorney's client"; indeed, "attorney working under contingent-fee agreement can best defray the client's cost of legal services by seeking

both EAJA and SSA fees".). The House Committee report stated that, although the attorney would be permitted "to seek recovery under both authorizations [the EAJA and SSA] . . . [, t]he attorney . . . may keep the larger fee, but must return the amount of the smaller fee to the claimant." H.R. REP. 99-120, pt. 1, at 149.

*Shaw*, 10 Vet.App. at 504. Thus, a fee agreement allowing an attorney to collect and retain both an EAJA fee as well as a fee from the client for the same work is "unreasonable" pursuant to 38 U.S.C. §§ 5904 and 7263.

In *Shaw*, the fee agreement at issue, like the fee agreement in this matter, stated that there would be no offset of an EAJA award where the Court remanded the claim. The Court held that the fee agreement was "'unreasonable' on its face to the extent it may be read as precluding an offset where the Court remands with a direction that the BVA award benefits that the Court finds are required as a matter of law." 10 Vet.App. at 505. However, the Court also held that "the double-payment proscription would have no application to the payment of fees under the EAJA and under the fee agreement where the legal work done in connection with those fees is not the same." *Id*. at 504. The Court then concluded that it was "clear on the face of the appellant's contentions in his substantive brief that any legal representation on remand [would] be different from that performed [at the Court] because in the Court proceedings the appellant's counsel sought only a remand to the Board and did not seek reversal of the Board decision." *Id*. "Accordingly, [the Court found that] the offset issue was not presented by the facts of this case because [it was] not a case where the appellant's counsel [was] seeking fees, under the fee agreement and the EAJA, for the 'same work.'" *Id*.

The concept that work performed before this Court and on remand to the Board and VA is not necessarily the "same work" was the subject of this Court's decision in *Fritz v. West*, 13 Vet.App. 190 (1999). In *Fritz*, the Court again considered the reasonableness of a provision in a fee agreement that no offset of an EAJA award would be made where the Court remanded the claim. On the merits of the veteran's appeal, the Court had granted the parties' joint motion for remand, vacated the Board's decision, and remanded the claim for readjudication. 13 Vet.App at 191. The Court held that the fee agreement was not unreasonable on its face pursuant to *Shaw, supra*, because the fee agreement did not preclude an offset where the Court reverses and remands for an award of benefits. *Id*. at 194. The Court noted that "[u]nder *Shaw*, an attorney generally may retain an entire

11

contingency-fee amount if the representation provided before the BVA/VA subsequent to the attorney's work before the Court involves obtaining more relief from the department than what the appellant received from the Court." *Id*. The Secretary had argued that the EAJA award required an offset because "inasmuch as the contingent fee contemplates a single sum in payment for services provided both before the Court and in any post-remand proceedings before VA, it is not clear to what extent the contingency fee may be duplicative of the EAJA award for services before the Court only." *Id*. The Court rejected this argument. Relying upon this Court's decision in *In re Mason*, (13 Vet.App. 79 (1999)) the Court held:

> [W]here the attorney claims the contingency fee for the representation provided in this Court, it would appear that any EAJA award for such representation would result in an offset against the contingency fee owed under the agreement. On the other hand, if the attorney claims the contingency fee for the representation provided before the BVA/VA, resulting in an award of benefits beyond the relief awarded by the Court, it would appear that no offset would be required.

13 Vet.App. at 194. The Court, in *Fritz*, therefore held that the attorney-fee-offset provisions in the fee agreement were not objectionable in the context of that case. *Id*. at 194. Thus, it appears that we have by our decisions in *Shaw* and *Fritz* crafted a narrow interpretation of the term "work," leaving open an opportunity for the subversion of the very purpose of EAJA.

"Congress passed the EAJA in response to its concern that persons 'may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing vindication of their rights.'" *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989). "'The objective of EAJA is to eliminate financial deterrents to individuals attempting to defend themselves against unjustified government action. Veterans are among the types of individuals the statute was intended to help.'" *Abbs v. Principi*, 237 F.3d 1342, 1347 (Fed. Cir. 2001) (quoting H.R. Rep. No. 102-1006, at 25 (1992)). EAJA awards belong to the claimant, not his or her attorney. "[T]he law gives the EAJA cause of action and standing to the client, not the attorney, and the attorney cannot amend the law by bestowing such standing on the attorney." *Shaw*, 10 Vet.App. at 506 (holding that a fee-agreement provision requiring client to execute "any and all" EAJA documents necessary to permit receipt of the EAJA award by the attorney "'unreasonable' on its face" because it conflicted with the plain language of EAJA which provides awards to a "party," not an attorney); *see also Curtis v. Brown*, 8 Vet.App 104, 108-09 (1995) ("EAJA fees awarded where the

12

attorney was paid by fee agreement . . . go first to reimburse the appellant the amount paid to the attorney pursuant to the agreement."). The purpose of EAJA is not to provide an attorney a greater fee than contemplated by his fee agreement. "[T]he policy of [EAJA] is to pay *non-enhanced* fees for legal services actually rendered." *Phillips v. General Services Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) (emphasis added). Moreover, we must be constantly mindful that in this "uniquely pro-claimant adjudicatory system," protecting the interests of the veteran is paramount. *See, e.g., Hayre v. West*, 188 F.3d 1327, 1333 (Fed. Cir. 2000); *cf. Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) ("[The U.S. Court of Appeals for the Federal Circuit] and the Supreme Court both have long recognized the character of veterans' benefits statutes is strongly and uniquely pro-claimant."). Thus, we must be particularly vigilant in construing fee agreements to protect the veteran from the drafting of a fee agreement which might unintentionally, or intentionally, deprive a veteran of his rights under the law.

The compensation the appellant agreed to accept for his services was "thirty percent (30%) of the total amount of any past-due benefits awarded to Client . . . on the basis of the Client's *claim* with the Department of Veterans Affairs." R. at 90 (emphasis added). He agreed "to provide legal services [to the veteran] in connection with [his] appeal to the [Court]." R. at 89. The fee agreement specifically provided that the work to be performed would include "[a]ll services necessary to prosecute appeal to the [Court and] . . . [i]n the event of a court-ordered remand this agreement shall include representation of the veteran by the Attorney at both the Board of Veterans' Appeals as well as any Regional Office of the Department of Veterans Affairs." *Id*.

The portion of the agreement discussing the contingency fee repeatedly described the payment as it pertained to the veteran's "claim or claims," and made no differentiations as to work to be performed before the Court, Board, or VA. In the EAJA portion of the fee agreement, however, the agreement did make such differentiations. Although the cost to the veteran of the 30% fee would be deferred by any amount awarded by the Court pursuant to EAJA in the event the *Court* awarded past-due benefits, the agreement carved out an exception where, in the event the Court remanded the claim, the 30% fee would actually be supplemented by any EAJA fee awarded. The Court did remand the veteran's claim, and past-due benefits were awarded on remand. Thus, the appellant collected a fee equal to 30% of the past-due benefits plus the EAJA fee awarded to the

13

veteran. This, of course, resulted in no greater cost to the veteran; however, it stripped the veteran of his right pursuant to EAJA to have his legal fees paid, at least in part, by the United States.

To be ultimately successful on the veteran's claim, i.e., securing an award of past-due benefits, the attorney contemplated and advised his client of the possibility of a remand and the agreement provided for representation on remand. If we were to consider the appellant's representation of the veteran before the Board on remand different "work" than that performed here, we would improperly be allowing the EAJA fee to enhance the appellant's fee, rather than to reimburse the veteran for the cost of representation. *See Curtis, supra*. If there is any room for interpretive doubt as to what constitutes the "same work" for the purposes of EAJA, such doubt must be resolved in the veterans' favor. *See Brown v. Gardner*, 115 U.S. 115, 118 (1994). Thus, we must conclude that the representation of a claimant in pursuit of a claim at all stages of the adjudication process is the "same work," regardless of the tribunal before which it is performed. Therefore, the Court holds that a fee which includes both an EAJA award plus a contingency fee for work performed before the Court, Board, and VA on the same claim such that the fee is enhanced by an EAJA award is unreasonable pursuant to 38 U.S.C. §§ 5904(c) and 7263. Any previous decisions of this Court to the contrary are hereby overruled. To the extent the fee agreement here provides that any portion of the EAJA award will not be offset against the fee paid, or to be paid, by the veteran to the appellant, the appellant's fee is "excessive and unreasonable." Accordingly, pursuant to 38 U.S.C. § 7263, the Court will affirm the Board's finding that the attorney is not entitled to retain the EAJA award.

## IV. THE REASONABLENESS OF THE 30% CONTINGENCY FEE

The Court, like the Board, is vested with the power to review fee agreements; however, the Court has concluded that it "should intrude upon such a free and voluntary contract *only* upon the invitation of the parties or where the fee agreement is patently unreasonable on its face." *Lewis*, 5 Vet.App. at 154 (emphasis added); *see also In Re Mason*, 12 Vet.App. 135, 136-38 (1999) (Nebeker, *Chief Judge*, concurring.). In an attempt to entice attorneys to represent veterans, 38 U.S.C. § 5904(d) made it possible for the attorneys to be paid directly by the Secretary, but limited the fee the attorney could charge under a § 5904(d) agreement to 20% of any past-due

14

benefits awarded to the veteran. However, the provisions of § 5904(d) were made neither exclusive nor mandatory and attorneys are free to enter into fee agreements that do not meet the requirements of § 5904(d), but in such instances they must collect their fees directly from their clients without the assistance of the Secretary. The only statutory limits on fees pursuant to non-direct-pay fee agreements are that an attorney cannot charge for services performed prior to entry of a final decision by the Board and the fee cannot be "excessive or unreasonable." *See* 38 U.S.C. § 5904(c)(1) and (2). However, the mere fact that a fee pursuant to a non-direct-pay fee agreement exceeds the 20% does not make it "patently unreasonable on its face" such that there should be an "intru[sion]" into the agreement entered into by the attorney and his client. *Compare Silverman v. Brown*, 7 Vet.App. 487 (1995) (Court reviewed fee agreement calling for a fee "not to exceed 50% of benefits awarded" plus "additional reasonable compensation") *with Matter of Fee Agreement of Smith*, 4 Vet.App. 487, 499 (1993) (Court found fee of $1,000 plus a 20% contingency fee not "excessive or unreasonable"). With respect to the BVA's review of fee agreements, the Court commented soon after its inception that

> [i]n a very real sense, the parties to a review of a fee agreement are the claimant on the one hand and the attorney on the other. Rather than performing as an advocate, the BVA serves in a quasi-judicial role. Under these circumstances, when review of a fee agreement is statutorily authorized, we think it appropriate, indeed necessary, that the BVA provide notice to the claimant as well as to the claimant's attorney of its intention to review a fee agreement and of its ultimate decision.

*Nagler v. Derwinski*, 1 Vet.App. 297, 304 (1991).

The record in this matter indicates that the appellant was advised that the Board's review of the fee agreement was initiated because of a concern that the appellant was attempting to retain both the contingency fee and the EAJA fee awarded to the veteran. In the July 3, 1997, letter, Thomas D. Roberts, Deputy Chief Counsel for Legal Affairs, concluded: "If you receive an EAJA fee and your client is awarded past-due benefits, we will take appropriate steps to review your agreement for reasonableness." R. at 96. In his letter of November 17, 1998, Mr. Thomas wrote:

> Because your fee agreement does not provide that your contingent fee payment from past-due benefits is to be offset by an EAJA award concerning your Court work, we are asking the Board to review your fee agreement with Mr. Weatherspoon for reasonableness on its own motion, pursuant to 38 U.S.C. § 5904(c)(2).

15

R. at 141.  On the record before the Court, at no time was the appellant advised that the fee agreement was going to be reviewed for reasonableness of the 30% contingency fee.

As demonstrated in Part III of this opinion, the Board's concern about the lack of an EAJA offset was legitimate and its review in that regard proper.  An artfully or inartfully drafted contingency fee agreement which would circumvent the letter and spirit of EAJA would be "patently unreasonable on its face."  However, the Board's actual review of the fee agreement and its ultimate decision were far more expansive than that directed by the Chairman or described in the letters to the appellant.

The Board found that the 30% contingency fee provided for by the fee agreement was excessive and unreasonable and therefore reduced the fee to 20% of past-due benefits awarded.  In determining that the 30% contingency fee was unreasonable, the Board stated:

> A review of the record demonstrates that the extent and type of services the attorney performed since March 1997 included negotiating and assisting in drafting a joint motion for remand, writing a letter dated February 26, 1998, to the Adjudication Officer at the RO, and writing a June 2, 1998[,] five-page document with additional argument in support of the veteran's appeal and submitting it to the Board.  It is also very likely that in the months between the March 1997 Board decision and the August 1998 Board decision, the attorney had several contacts with the veteran.  However, in the additional arguments from the attorney, contained in the letter dated December 11, 1998, the attorney does not itemize or otherwise indicate that any other legal services were performed to justify fees over $60,000.00.

R. at 6.  The appellant argued that there was no factual or legal basis to conclude that his fee was unreasonable; the Board disagreed, stating:

> As noted above, there is no evidence of legal services provided after the March 1997 Board decision which justify such an excessive fee.  There is no evidence of record as to the number of hours the attorney and his staff worked on this case from March 1997 to August 1998.  In his December 1998 letter, the attorney has not alleged that he and his staff worked an inordinate amount of hours on this case.  In assessing the reasonableness of his fee, the Board notes that if an attorney were to charge $200 per hour for legal services, it would require 309 hours of work to constitute a fee of $61,800.00.  The evidence available of the legal services the attorney provided the veteran between the final Board decision in March 1997 and the August 1998 Board decision does not justify a fee of $61,805.10, and the Board finds that the fee is "excessive and unreasonable."

16

R. at 7. Noting that VA regulations provide that a fee of 20% of past-due benefits is presumed reasonable, the Board then concluded that, in this matter, "[a]lthough the evidence does not demonstrate that the attorney and his staff spent a great deal of time on this case between March 1997 and August 1998, the other factors in determining whether fees are reasonable support a determination that a fee of 20 percent of past-due benefits is reasonable." *Id.*

Pursuant to 38 C.F.R. § 20.609(e), factors to be considered by the Board in determining whether fees are reasonable include:

(1) The extent and type of services the representative performs;
(2) The complexity of the case;
(3) The level of skill and competence required of the representative in giving the services;
(4) The amount of time the representative spent on the case;
(5) The results the representative achieved, including the amount of any benefits recovered;
(6) The level of review to which the claim was taken and the level of the review at which the representative was retained;
(7) Rates charged by other representatives for similar services; and
(8) Whether, and to what extent, the payment of fees is contingent upon the results obtained.

The Court reviews the Board's decisions regarding the reasonableness of a fee agreement de novo. *See In re Vernon*, 8 Vet.App. at 459 ("[I]n conducting a review of a fee agreement, a finding by the Board regarding the excessiveness or unreasonableness of the fee is entitled to no deference.").

The appellant argues that the Board improperly interpreted 38 C.F.R. § 20.609(f) as establishing a presumption that a reasonable fee is *limited* to no more than 20% of past-due benefits, and that in order to charge a greater fee, the attorney must rebut that presumption. The Court agrees that this would be an improper application of 38 C.F.R. § 20.609(f) ("Fees which total no more than 20 percent of any past-due benefits awarded . . . will be presumed reasonable."). However, upon close inspection of the Board's decision, it appears the Board did not apply § 20.609(f) until *after* it reduced the 30% fee to 20%. The Board then acknowledged that a 20% fee would be presumed reasonable, but applied the factors set forth in 38 C.F.R. § 20.609(e) to determine whether the presumption had been rebutted and a fee *even lower* than 20% was justified. In considering these factors the Board found that (1) "the case was quite complex"; (2) "the attorney demonstrated skill and competency"; (3) "the results, including the amount of benefits recovered, were very beneficial

17

to the veteran"; and (4) "the amount of benefits recovered was a very large sum." R. at 8. The Board therefore concluded that the other factors supported a determination that a fee of 20% of past-due benefits was reasonable, and that the § 20.609(f) presumption that a 20% fee is reasonable had not been rebutted. R. at 7-8; *see also* 38 C.F.R. § 20.609(f). Thus, because the appellant was not prejudiced by the Board's use of § 20.609(f), we need not address whether it was correctly applied.

Turning to the Board's reduction of the fee from 30% to 20% of past-due benefits, it is apparent to the Court that the Board was struck by the total amount of the fee and focused primarily on the number of hours the attorney and his staff spent on this case. Although the number of hours spent is one factor to be considered in determining whether a fee is reasonable, particularly where an agreement calls for an hourly fee, it is not the only or indeed the primary factor in the case of a contingency fee agreement. An attorney taking a case on a contingent basis may earn a large fee for very few hours; however, that same attorney also takes the risk that he will receive no fee, regardless of the number of hours spent on a case. In essence, the attorney agrees to share the risk of not prevailing on the claim with his client. Based upon nothing more than a lack of evidence that the appellant spent an "inordinate" amount of time on this matter, the Board determined that the appellant's fee should be reduced to 20% of the past-due benefits awarded. In doing so, the Board erred.

There is simply no basis in the record for the Board's reduction of the appellant's fee from 30% to 20%. On the contrary, as the Board explained in support of its decision not to reduce the 20% fee even lower, several of the 38 C.F.R. § 20.609(e) factors actually support the conclusion that the appellant's 30% contingency fee is not "excessive and unreasonable," e.g., the case was complex; the attorney was quite competent; he achieved a great deal of success for his client; and the amount awarded was a very large sum. *See* R. at 8. Moreover, the payment of fees was entirely "contingent upon the results achieved." *See* 38 C.F.R. § 20.609(e)(8). Therefore, pursuant to 38 U.S.C. § 7263, the Court holds on de novo review that the 30% contingency fee contemplated by the fee agreement entered into by the appellant and his client is not "excessive or unreasonable." *See In re Vernon, supra*. Accordingly, the April 6, 1999, decision of the Board will be and is reversed to the extent that it reduced the appellant's fee below the 30% of past-due benefits called for in the fee agreement. *See* 38 U.S.C. § 7252(a). Although the Board, like the Court, is vested with the power to review fee

18

agreements, the Court trusts that the Board will in the future exercise its authority judiciously, with attention to the seriousness of the intrusion that such a review entails and full notice to all concerned, and "only upon the invitation of the parties or where the fee agreement is patently unreasonable." *See Lewis*, 5 Vet.App. at 154; *see also Nagler, supra*.

## V. CONCLUSION

Upon consideration of the foregoing, the April 6, 1999, decision of the Board is AFFIRMED IN PART and REVERSED IN PART.

STEINBERG, *Judge*, concurring in part and dissenting in part: I concur in the Court's affirmance of the April 6, 1999, decision of the Board of Veterans' Appeals (Board or BVA) as to whether or not there should be an offset of fees awarded under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(F), although not the rationale stated in support of that result and not necessarily the full amount of the offset imposed. I dissent from the Court's reversal of that portion of the Board's decision that found that the 30% contingency fee was unreasonable and excessive in this case. I also disagree with the manner in which the Court has gone about reaching its decision in this case. Many of my concerns are cast in preliminary terms, because I believe, as does my dissenting colleague, Chief Judge Kramer, with whose opinion I am in substantial agreement, that a number of particular matters have been inadequately addressed.

## I. Deficient Court Processes

First, the Court either glosses over or ignores entirely a number of important issues (for example, the analysis of pertinent analogous authority, such as the attorney-fee jurisprudence in the federal courts pertaining to the EAJA and Social Security Act (SSA)) that should be part of the basis for judicial decisionmaking in this case. The absence of such an approach is particularly regrettable when the Court is sitting en banc. Equally deficient is the process of the majority here in issuing an en banc opinion that overrules past precedent (1) *without* briefing from the parties (including possible amicus curiae) on whether that precedent should be abandoned and on certain issues not addressed in the opinion; (2) *without* en banc oral argument; and (3) *without* a conference of the full

19

Court.[1]  I have long decried this practice,[2] and find it most unfortunate that the Court is continuing down the path that most recently led to the overruling by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *D'Amico v. West*, 209 F.3d 1322, 1327 (Fed. Cir. 2000), of this Court's misguided and conclusory holdings in *Laruan v. West*, 11 Vet.App. 80 (1998) (en banc).[3]

## II.  Merits

On the merits, I will outline first the nature of the appellant's representation of the veteran in the proceedings before a Department of Veterans Affairs (VA) regional office (RO), and then discuss my reasons for disagreeing with the Court's reversal of the BVA decision reducing the 30% contingency fee to 20%.  I will conclude with my analysis of the EAJA-offset matter.

### *A.  Introduction*

Before turning to the analysis of these two issues, however, I want to express my concern that the majority opinion is more an exercise in policymaking, that is, in judicial legislation, than judicial review of policies established by the popularly-elected and therefore publicly accountable legislative and executive branches.  I reach this conclusion because the majority appears to be intent, without any exploration of what may have been the underlying legislative intent, on reaching a one-size-fits-all holding as to EAJA offset, despite the recent incantation by three of the four majority

---

[1]  "If en banc consideration or review is ordered, the Chief Judge . . . . usually convenes a conference or directs the Clerk to schedule oral argument."  U.S. VET. APP. INTERNAL OPERATING PROCEDURES V.(a)(4); *see Morton v. West*, 13 Vet.App. 205, 213 (1999) (en banc order) (Steinberg and Kramer, J.J., dissenting from denial of en banc consideration) (admonishing "that the Court should have the benefit of full briefing from the Secretary and appellants' advocates and full oral argument ***before*** deciding the knotty questions involved in this case"); *Laruan v. West*, 11 Vet.App. 80, 91 (1998) (en banc) (Kramer and Steinberg, J.J., concurring in part and dissenting in part) (noting that "the majority inexplicably renders its wisdom without benefit of a conference of the judges, briefing, or oral argument"); *see also Meeks v. West*, 13 Vet.App. 40, 41-48 (1999) (en banc order) (Steinberg and Kramer, J.J., dissenting from prior revoked order denying en banc consideration) (protesting panel opinion's "failure to set forth a reasoned analysis").

[2]  *See Morton* and *Laruan*, both *supra* note 1; *Bailey v. Gober*, 10 Vet.App. 454, 456 (1997) (en banc order) (Steinberg, J., dissenting) ("I would prefer to receive full briefing . . . at this point"), *rev'd*, *Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc); *In re Motion of Smith*, 7 Vet.App. 92, 95 (1994) (en banc order) (Steinberg, J., dissenting) ("By deciding this case "'without benefit of oral argument and full briefing, . . . this Court runs a great risk of rendering erroneous or ill-advised decisions that may confuse [the Department of Veterans Affairs (VA) and the Court's bar]: there is no reason to believe that this Court is immune from making mistakes, particularly under these kinds of circumstances.'" *Allen v. Hardy*, 478 U.S. 255, 261-62 (1986) (Marshall and Stevens, JJ., dissenting) (quoting *Harris v. Rivera*, 454 U.S. 339, 349 (1981) (Marshall, J., dissenting)).").

[3]  *See also Bailey v. West*, *supra* note 2.

20

judges that the Court should decide cases on "the narrowest possible grounds";[4] and on issuing the ominous warning to the Board, at the conclusion of the majority's opinion, that "the Court trusts that the Board will in the future exercise its authority judiciously, with attention to the seriousness of the intrusion that such a review entails and . . . only upon the invitation of the parties or where the fee agreement is patently unreasonable". *Ante* at __, slip op. at 19 (citations and internal quotation marks omitted). I also conclude that there has been a rush to judgment in general here because, as noted above, the Court issues its pronouncements in each of these instances without providing detailed analysis of the statutory words, underlying legislative intent, or analogous precedent and refuses to recognize, let alone confront, a substantial jurisdictional issue. It seems especially ironic that such legislating from the bench comes so soon after the Court's *ultra vires* exercises were rejected by Congress and the Federal Circuit, respectively, last year.[5]

### B. Background

At the outset, I will set forth the facts of this case, which, in the main, the majority opinion does not set forth to the extent that I believe is necessary to decide the reasonableness and offset issues, discussed in parts II.C. and II.D., below.

The facts are: In the Court's merits disposition, the parties submitted a five-page joint motion for remand in February 1998. Record (R.) at 98-103. That motion, which the Court granted via an unpublished February 18, 1998, order signed by the Clerk of the Court, was based on an asserted clear and unmistakable error (CUE) by the Board in failing to consider in its March 1997 decision

---

[4] *Best v. Principi*, __ Vet.App. __, __, No. 99-1144, 2001 WL 526758, at *1 (May 15, 2001) (per curiam order). *But see Mahl v. Principi*, __Vet.App.__,__, No. 99-1678, order at 8-10, 2001 WL 640170 at *3-9 (June 7, 2001) (Steinberg, J., dissenting) (pointing out that Court has never followed practice of deciding cases on "the narrowest possible grounds").

[5] *See* Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA); Explanatory Statement of Committees on Veterans' Affairs on VCAA (Background), 146 Cong. Rec. H9913 (daily ed. Oct. 17, 2000) (expressly disapproving of this Court's opinion in *Morton v. West*, 12 Vet.App. 477 (1999), *remanded on other grounds*, 243 F.3d 557 (Fed. Cir. 2000) (table)); H.R. Rep. No. 106-781, 106th Cong., 2d Sess. 11 (July 24, 2000) ("Committee's intent is to overrule that portion of the decision in *Morton* that found an implied limitation on VA's authority to provide assistance to claimants who had not submitted 'well-grounded' claims"); S. Rep. No. 106-397, 106th Cong., 2d Sess. 72 (Sept. 6, 2000) ("Committee bill . . . modifies the pertinent statutes to reinstate VA's traditional practice of assisting veterans at the beginning of the claims process"); *see also D'Amico v. West*, 209 F.3d 1322, 1327 (Fed. Cir. 2000) (overruling *Laruan*, *supra* note 1, and noting that in *Laruan* this "[C]ourt did not rely on any statutes or regulations to support its position" and "cited the legislative history" pertinent to the statutes at issue there notwithstanding that "no statement in the legislative history support[ed] the court's interpretation of those sections").

21

the VARO's error, in its May 1981 decision (R. at 35), of not considering certain potentially applicable regulations in 38 C.F.R. §§ 3.303(a), (b) and 3.304(b) (1980) (presumption of soundness and continuity of symptomatology). By granting the joint motion for remand, the Court decided specifically that those VA regulations were applicable and had not been applied, and that decision of the Court was binding on the Board.[6] After the Court issued its remand order, counsel sent to the Board a June 1998 four-and-one-half-page letter in which the argument beginning on page 2 (R. at 106) was practically a verbatim recitation (except for a few sentences deleted and two new sentences added on pages 4-5, which are, in fact, invalid arguments) of the February 1998 joint motion that this Court had granted. *Compare* R. at 106-09 *with* R. at 98-101. Moreover, counsel did not present to the Board even *one* argument as to how the outcome in 1981 would have been manifestly changed if the RO had applied the overlooked regulations, even though that was the only issue remaining before the Board as to the CUE claim remanded by the Court.[7]

---

[6] It is apparent that the Board so concluded. *See* Record (R.) at 114 (1998 Board of Veterans' Appeals (Board or BVA) decision stating that the question before it was "whether the . . . failure [by a VA regional office (RO)] to consider or follow applicable regulations in its May 1981 rating decision constitute[d] clear and unmistakable error (CUE)"); *Tobler v. Derwinski*, 2 Vet.App. 8 (1991). The joint motion for remand stated:

> Because the veteran was sound before service, was diagnosed with a disorder in service, and had symptoms of a nervous condition beginning in service and continuing after discharge, *he could have been eligible for service connection in accordance with* 38 C.F.R. §§ 3.303(a), (b) and 3.304(b) (1980).
>
> However, the May 1981 rating decision did not apply any of these regulations. This Court has ruled that an RO has "undebatably committed error" when it "fail[ed] to follow an applicable regulation" and when it "in effect [denied] the existence of evidence that did indeed exist and was a part of the claims file." *Russell*, 3 Vet.App. [310,] 319 [(1992) (en banc)]. Whether such error constitutes clear and unmistakable error as contemplated in 38 C.F.R. § 3.105(a) is a matter for the Board, not the Court, to determine. *Russell* [3 Vet.App.] at 320.
>
> Accordingly, this case should be remanded to allow the BVA to consider all the relevant regulations and determine whether the *regional office's failure to consider or follow applicable regulations* in its May 1981 rating decision constitutes clear and unmistakable error.

R. at 101-02 (emphasis added). The motion's citation to the two-step approach adopted in *Russell* demonstrates that, in granting the joint motion, the Court was determining in the words of *Russell*, that "the RO undebatably committed error . . . in failing to follow an applicable regulation", *id*. at 319, and that it was "a task for the Board in the first instance . . . . to determine whether the error made by the RO in 19[81] was a 'clear and unmistakable error' under 38 C.F.R. § 3.105(a)", that is, whether "correction of the error would have [manifestly] changed the outcome", *id*. at 320.

[7] *See Russell*, 3 Vet.App. at 313-14 (holding that CUE is "the sort of error which, had it not been made, would have manifestly changed the outcome"); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly

The Board then denied the CUE claims that had been remanded by the Court; the Board found that the application of the regulations that the Court remand had identified as erroneously not applied by the 1981 RO decision would *not* have "manifestly changed the outcome"[8] of the case based on the evidence of record in May 1981.  *See* R. at 120, 122.  The Board then went on to find CUE on an entirely new basis -- failure to apply 38 C.F.R. §§ 3.307 and 3.309 (1980), regarding presumptive service connection -- because the evidence in May 1981 had showed clearly that the veteran had been diagnosed as having had a psychosis within one year after discharge and that it was then manifested to at last a 10% degree of disability (R. at 123-24).[9]

It is in the context of the foregoing facts about the merits litigation and adjudication and the attorney's representation before the Court and VA that this appeal should be decided.

### C.  BVA Decision on Unreasonableness of 30% Contingency Fee

### 1.  Jurisdiction of the Court

In this case, the majority does not predicate its jurisdiction upon a Notice of Disagreement (NOD).[10]  I believe that this is an issue that needs to be addressed and resolved by the en banc Court,[11] especially because the appellant has specifically raised the absence of a jurisdiction-conferring NOD in support of his argument that the BVA decision must be vacated.  Brief at 14-15.

---

adopting the "manifestly changed the outcome" language in *Russell*, *supra*), *cert. denied*, 120 S.Ct. 405 (1999).

[8]  *Russell*, *supra* note 7.

[9]  *See* 38 U.S.C. § 1112(a)(1) (presumption of service connection for "chronic disease becoming manifest to a degree of 10 percent or more within one year from the date of separation from . . . service"); 38 C.F.R. § 3.309(a) (1980) (defining "psychoses" as chronic diseases for purposes of section 1112).

[10]  In general, the Court has jurisdiction to review a final BVA decision only where a Notice of Disagreement (NOD) was filed under 38 U.S.C. § 7105 on or after November 18, 1988, as to the underlying decision of an agency of original jurisdiction, usually an RO.  *See* Veterans' Judicial Review Act, Pub. L. No. 100-687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; *Velez v. West*, 11 Vet.App. 148, 157 (1998) ("Court has no jurisdiction over an issue absent a post-November [17], 1988, NOD, expressing disagreement with an RO's decision on that issue or with an RO's failure to adjudicate that [issue]"); *see also Barrera v. Gober*, 122 F.3d 1030, 1031 (Fed. Cir. 1997); *Grantham v. Brown*, 114 F.3d 1156, 1157 (Fed. Cir. 1997).  Generally, an NOD "shall be filed within one year from the date of mailing of notice of the result of initial review or determination" with which it is disagreeing. 38 U.S.C. § 7105(b)(1).

[11]  The issue was avoided in *In the Matter of the Fee Agreement of  Mason* (*Fee Agreement of Mason*), 13 Vet.App. 79 (1999), in the context of an appeal to the Court from a BVA decision that had been issued on the basis of a *sua sponte* BVA review of a direct-payment fee agreement carried out under 38 U.S.C. §§ 5904(c)(2) and (d).

23

Perhaps the majority is of the view that there is no need for an NOD in order for the Court to have jurisdiction over this matter under chapter 72 of title 38, U.S. Code, notwithstanding the requirement in section 402 of the Veterans' Judicial Review Act[12] [hereinafter VJRA § 402], that there be such an NOD in order for the Court to carry out under chapter 72 judicial review of "any case"? I could support such a holding that no NOD is needed in order for this Court to review a BVA decision on the reasonableness of a fee agreement.[13]

Rather than address this jurisdictional problem, the Court merely relies on 38 U.S.C. § 7252 and the Federal Circuit's opinion in *In the Matter of the Fee Agreement of Wick*, 40 F.3d 367, 370 (Fed. Cir. 1994). *Ante* at __, slip op. at 9. However, the *Wick* opinion does not deal with the NOD requirement of VJRA § 402, and the quotes in the majority's opinion, *ante* at __, slip op. at 8-9, do not address that critical matter. Moreover, the misplaced reliance on *Wick* is made without reference to the fact that *Wick*, as well as the Federal Circuit's opinion in *Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998), and our opinion in *Scates v. Gober*, 14 Vet.App. 62 (2000) (en banc), concerned this Court's and the Board's jurisdiction over a ***direct-payment fee agreement*** under section 5904(d). In this case, we are presented with a ***non***-direct-payment fee-agreement situation under section 5904(c)(2). Because of the significant differences between the statutory provisions concerning direct-payment and non-direct-payment fee agreements where the Board has undertaken *sua sponte* review of reasonableness, I believe that the Court should address whether the Federal Circuit's *Wick* and *Cox*

---

[12] *See supra* note 10.

[13] Such a holding could be based on the doctrine that the law does not require the impossible because there generally could not be a decision of an RO as to which an NOD could be filed to initiate ***an appeal*** to the Board when the Board itself undertakes *sua sponte* review of a fee agreement under 38 U.S.C. § 5904(c)(2), unless the Court were to require that before the BVA would have the authority to undertake such review it would have to refer the issue of eligibility to an RO for a decision. *Compare Carpenter v. Gober*, 14 Vet.App. 195 (2000) (per curiam order) (vacating for want of original jurisdiction under 38 U.S.C. § 5904(c)(2) BVA decision that had conducted *sua sponte* review of reasonableness of attorney fees in non-direct-payment fee agreement, and directing BVA to dismiss that matter, which, after notice to parties, "should be decided by the RO"), *and Cox v. West*, 149 F.3d 1360,1364 (Fed. Cir. 1998) (holding that "section 5904(c)(2) only gives the Board limited jurisdiction to review the *reasonableness* of a fee and to *reduce* the fee"), *with In the Matter of the Fee Agreement of Stanley*, 10 Vet.App. 104, 105 (1997) (citing 38 U.S.C. § 7263(d) and 7266(a) as basis for Court's jurisdiction over BVA *sua sponte* review, under 38 U.S.C. § 5904(c)(2), of reasonableness of attorney fees in non-direct-payment fee agreement, and affirming BVA decision finding no eligibility of attorney for fees from past-due benefits). Even then, if such referral were made, there would not be an NOD unless the veteran or attorney filed one, and thus, realistically, *sua sponte* review would not seem possible except where the RO found ineligibility.

24

opinions and our *Scates* opinion can be relied upon to find jurisdiction in the Court over this matter under section 7252(a) and whether this can properly be done without regard to resolution of the NOD question under VJRA § 402.[14]

## 2. *Fair Process*

Assuming that the Court has jurisdiction to review the Board decision on appeal, I would vacate the Board decision on the reasonableness of the 30% contingency fee and remand this matter on a pure fair-process ground. The majority notes that "[o]n the record before the Court, at no time was the appellant advised that the fee agreement was going to be reviewed for reasonableness of the 30% contingency fee." *Ante* at __, slip op. at 16. Notwithstanding the Court's implicit recognition that the Board's decision to reduce the 30% contingency attorney fee in this case was made without the attorney's being afforded adequate notice on that issue,[15] the majority never substantively addresses the ramifications of such a deficiency. In this regard, I note that section 5904(c)(2) authorizes the Board to conduct a review of fee reasonableness "on its own motion", and that the use of the word "motion" -- as opposed to, for example, "initiative" -- may be read as evidencing a legislative intent that when such BVA review is to be undertaken the BVA must follow a process akin to litigation and allow the attorney time to respond, just as a court generally would allow regarding a motion filed by another party. Thus, I would remand to the Board on the 30%-fee-reasonableness issue in order for the BVA to address, in the first instance,[16] the fairness of the

---

[14] Related to this jurisdictional inquiry is one as to the jurisdiction of the **Board** to address in the first instance the question of the appellant's **eligibility**, on the facts of this case, to receive a contingency fee under the non-direct-payment fee agreement here involved. R. at 4 (BVA finding that "the criteria for charging and being paid a fee in this case have been met"). Under *Cox*, 149 F.3d at 1364, which held that "section 5904(c)(2) only gives the Board limited jurisdiction to review the *reasonableness* of a fee and to *reduce* the fee", it appears that the Board had no jurisdiction over that issue.

[15] *See ante* at __, slip op. at 19 (calling for "full notice to all concerned" before fee agreements are reviewed by the Board); *cf. Thurber v. Brown*, 5 Vet.App. 119, 126 (1993) (discussing due process in terms of, inter alia, U.S. Constitution and nonadversarial nature of VA claims adjudication).

[16] *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) (although this Court "may hear legal arguments raised for the first time with regard to a claim that is properly before the [C]ourt, it is not compelled to do so in every instance"). I note in this regard that the appellant did present a December 11, 1998, letter to the Board that defended the reasonableness of the 30% fee. R. at 146-48. Although the Board's November 17, 1998, letter had notified the appellant only that the fee agreement would be reviewed by the BVA because of its failure to provide for an offset of the contingent fee by any fee awarded under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(F), any deficient notice might have been cured by the opportunity that the appellant took, *sua sponte*, to present a defense of the

25

process it followed in this case in ordering the attorney to refund to his client one third of the fee he had been paid by his client under their contingency-fee agreement. I believe that it is important not to slough over that possible fair-process deficiency in order to reach the merits of the 30%-to-20% reduction by the Board.[17]

### 3. Merits of Board's Reduction

Although I would not reach this issue because I would vacate for consideration of the fairness of the process (again, assuming Court jurisdiction over the merits), the majority does reach this issue -- albeit prematurely -- and reverses the Board's decision reducing the attorney's contingency fee from 30% to 20%. I believe that this result is plainly and demonstrably wrong. The facts outlined in part II.B., above, illustrate that the following conclusion in the Court's opinion dramatically overstates the quality and effect of the attorney's representation:

> [S]everal of the 38 C.F.R. § 20.609(e) [(2000)] factors actually support the conclusion that the appellant's 30% contingency fee is not "excessive and unreasonable," e.g., the case was complex; the attorney was quite *competent*; [and] he *achieved* a great deal of success for his client . . . .

*Ante* at __, slip op. at 18 (emphasis added). That outline of the facts shows very clearly that a reduction of the 30% fee is not only reasonable (albeit essentially not for the reasons stated by the Board) but is required under VA's regulation.[18] This is so (1) because the appellant's written

_____

30% fee.

[17] The Court's willingness to finesse this issue further suggests an eagerness to reach the merits of the reasonableness issue and render a policy admonition to the Board. *See* part II.A., above.

[18] That regulation, 38 C.F.R. § 20.609(e) (2000), provides:

> (e) *Fees permitted*. Fees permitted for services of an attorney-at-law or agent admitted to practice before the Department of Veterans Affairs must be reasonable. They may be based on a fixed fee, hourly rate, a percentage of benefits recovered, or a combination of such bases. Factors considered in determining whether fees are reasonable include:

> (1) The extent and type of services the representative performed;
> (2) The complexity of the case;
> (3) The level of skill and competence required of the representative in giving the services;
> (4) The amount of time the representative spent on the case;
> (5) The results the representative achieved, including the amount of any benefits recovered;
> (6) The level of review to which the claim was taken and the level of the review at which the representative was retained;
> (7) Rates charged by other representatives for similar services; and
> (8) Whether, and to what extent, the payment of fees is contingent upon the results achieved.

submission (and the record on appeal contains no others) was a largely verbatim reiteration of the February 1998 joint motion and presented to the Board on remand only the wrong arguments -- *not* being directed to the only issue before the Board of whether correction of the RO's errors manifestly would have resulted in an award of service connection;[19] (2) because his arguments were related to theories that were totally unsuccessful -- having been explicitly rejected by the Board (R. at 120-22); and (3) because he failed to identify to the Board or the Court the CUE theory that the Board ultimately found justified a CUE award (R. at 123-25). The VA regulation mandates that the "extent and type of services", the attorney's "level of skill and competence", and "the amount of time . . . spent" all be considered "in determining whether fees are reasonable". 38 C.F.R. § 20.609(e)(1), (3), (4).[20] Yet the majority does not address those factors, the consideration of which would all tend to support the BVA's reduction.

In this regard, the Court's analysis not only fails to consider adequately each of the factors set forth in the VA regulation but fails to consider at all the VJRA legislative history in terms of fee-reasonableness review and the factors that federal courts have prescribed for assessing the reasonableness of contingency-fee agreements in Social Security cases, where a court may order that a fee up to 25% be paid out of a past-due benefits award.[21] For example, the U.S. Court of Appeals

---

[19] *See supra* notes 6 and 7.

[20] In addition, as to whether the appellant could, after a decision reducing his fee to 20%, claim that he seeks 30% solely for representation before *the Court* pursuant to *Fee Agreement of Mason*, *supra* note 11, I hazard no view. I note, however, that (1) under paragraph 3 of the fee agreement, quoted *ante* at __, slip op. at 2, it is not clear that the past-due benefits were awarded "on the basis of the client's claim" (because CUE was found on an entirely different theory) and (2) a fee-agreement "reasonableness" review could still be undertaken by the Board, which in its decision on appeal purported to consider all representation provided "between the final Board decision in December 1997 and the August 1998 Board decision" (R. at 7). I further note that the appellant stated in his December 11, 1998, letter to the Board: "The Court action did not result in an award of past[-]due benefits. Therefore, under the terms of the fee agreement, no fee was due and owing, or otherwise payable, by Mr. Weatherspoon for the work performed at the Court in order to secure a remand." R. at 148. In any event, that is not a matter presently before us.

[21] Section 206(b)(1) of the Social Security Act provides, in pertinent part:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits.

for the Sixth Circuit (Sixth Circuit) concluded in assessing the reasonableness of a fee percentage sought by an attorney to be paid out of past-due Social Security benefits awarded:

> Deductions should generally fall into two categories: 1) those occasioned by improper conduct or *ineffectiveness of counsel*; and 2) situations in which counsel would enjoy a windfall because of either an inordinately large benefit award or from *minimal effort expended*.

*Rodriguez v. Brown*, 865 F.2d 739, 746 (6th Cir. 1989) (en banc) (emphasis added).[22] The Sixth Circuit then went on to amplify the second category, in terms that resonate as to the facts of the instant case, as follows: "Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards [sic] fee would obviously be inappropriate." *Id.* at 747.

It seems almost impossible to believe that Congress intended the extraordinary "reasonableness" review, authorized to be conducted by the BVA and this Court to protect veterans -- even if they do not request such protection -- to be any less comprehensive than the provision to protect Social Security recipients on which the contingent-fee provisions of section 5904(d) were generally modeled in 1988.[23] It appears that federal courts *routinely* reduce Social Security direct-pay contingency-fee-agreement amounts (permissible only up to 25%, as contrasted with the more protective 20% maximum for direct-pay contingency-fee agreements permitted by section 5904(d) as to VA benefits) based on reasonableness review where the court believes that the hours worked divided into the contingency-fee amount cannot be justified based on the actual work performed by the attorney.[24]

---

42 U.S.C. § 406(b)(1).

[22] The factors described by the en banc U.S. Court of Appeals for the Sixth Circuit in *Rodriguez v. Brown*, 865 F.2d 739, 746 (6th Cir. 1989) (en banc), seem to be representative of those that are generally applied in other jurisdictions as well. *See, e.g., Wells v. Sullivan*, 907 F.2d 367, 372 (2d Cir. 1990); *McGuire v. Sullivan*, 873 F.2d 974, 981-83 (7th Cir. 1989); *Hull v. Bowen*, 748 F.Supp. 514, 522 (N.D. Ohio 1990); *see also Cotter v. Bowen*, 879 F.2d 359, 363 (8th Cir. 1989) (adopting lodestar hourly-rate analysis, an approach more restrictive than *Rodriguez*).

[23] S. REP. NO. 100-418, 100th Cong., 2d Sess. 67 (Jul. 7, 1988) (noting that contingency-fee provision is "similar to that provided for in section 206(a) of the Social Security Act (42 U.S.C. [§] 406(a))").

[24] *See, e.g., Wells*, 907 F.2d at 372 (court "ought not blindly approve every fee request made pursuant to a contingent agreement" and "should . . . consider . . . whether the requested amount is so large as to be a windfall to the attorney" (citing *Rodriguez, infra*)); *McGuire*, 873 F.2d at 981 ("court should consider the reasonableness of the contingency percentage to make sure the attorney does not receive fees which are out of proportion to the service

28

Because the grounds stated by the majority (relating to the case's complexity, the competency of the attorney's work, and the success that *he* achieved) are without foundation on the facts of this case, the only remaining basis under VA's regulation (20 C.F.R. § 20.609(e)(8)) for the Court's decision not to reduce the 30% fee is the Court's analysis of the risk-taking/risk-sharing nature of contingency-fee agreements in general. *Ante* at __, slip op. at 18. However, that basis alone does not seem sufficient to justify a 30% fee under VA regulations that specify eight factors to be considered in assessing fee reasonableness. *Compare* 38 C.F.R. § 20.609(e)(1)-(7) *with* 38 C.F.R. § 20.609(e)(8). Moreover, Social Security caselaw seems replete with statements that *a contingency arrangement is only one factor to be considered* -- and not *the only* factor.[25] I believe that it is impossible to read these cases and conclude that the Board's reduction in the instant case is unwarranted, given the facts here (even though part of the Board's reasoning was incorrect), unless it was Congress' intention to protect veterans less than Social Security recipients in their fee agreements with attorneys. I know of no basis for reaching such a conclusion, and the language of § 20.609(e) certainly evinces no such intention on the Secretary's part.[26]

---

performed, the risk of loss[,] and the other relevant considerations"); *id*. at 982 ("we do not propose a blind approval of contingency fees"); *Cotter*, 879 F.2d at 365 ("although "contingent fee agreement . . . must also be considered as a factor in determining a 'reasonable fee' . . . [,] we cannot say the district court abused its discretion in holding the lodestar [hourly-rate] fee *fully compensated* for the contingent nature of the fee agreement in this case" (citations omitted) (emphasis added)); *Rodriguez*, 865 F.2d at 747 ("due deference should be given to th[e] expression of the intentions of the parties [contained in a fee agreement;] . . . [h]owever . . . a court is not bound to award recovery according to the stated agreement").

[25] *See* cases cited *supra* note 24. *See generally* J.F. Ghent, *Construction and Application of Attorney's Fee Provision (42 U.S.C.A. § 406(b)(1)) of Federal Social Security Act*, 22 A.L.R. 3d 1081 (1968 & Suppl. 2000). In view of the foregoing, I believe that there is a need for thorough research on this subject, which is still another reason why this case should not have been decided without further briefing and oral argument before the full Court.

[26] *See supra* note 18. In describing the fee-agreement review process included in the VJRA compromise agreement, Senator Cranston stated:

In our meetings to resolve the differences between the Senate-passed and House-passed versions of S. 11, the House committee expressed concern that the cap as articulated in the Senate bill could result in veterans being able to retain effective counsel. To quote an old cliche: "You get what you pay for." Certainly, if we are going to give veterans real access to judicial review, we must give them access to good, qualified attorneys. I believe that allowing attorneys to charge reasonable fees will accomplish that goal and was convinced by the position of the House that its provisions on this point are preferable to the highly restrictive provisions of the Senate-passed measure [limited to a $500 flat fee].

Additionally, I believe that, along with finally granting veterans the right to obtain judicial

Furthermore, this is exactly the kind of case for which I believe that a BVA *sua sponte* review under 38 U.S.C. § 5904(c)(2) was designed, in order to protect a VA claimant.[27] Yet, the Court has selected just such a case in which to admonish the Board against intruding into the attorney-client relationship, *ante* at __, slip op. at 18-19, despite Congressional intent to "provide protection against any overreaching on the part of attorneys."[28] And, again, the Court has made this rather draconian pronouncement without reference to legislative history or analogous Social Security cases and without providing an adequate opportunity for the Secretary or appellants' advocates in general to address the issue. The Court's failure to take into account the extent to which the federal courts examine the reasonableness of attorney fees in Social Security cases even where the parties have entered into a contingency-fee agreement, and the factors that the courts consider in determining reasonableness, highlights the defective process used by the en banc Court in deciding this case without further briefing, oral argument, and a case conference.

Finally, I want to stress that I would not deprive the appellant of a reasonable attorney fee despite the foregoing analysis of the nature of the representation provided before the Board. Under VA regulations, a 20% contingency fee is generally presumed to be reasonable (38 C.F.R. § 20.609(f) (2000)). I agree with the majority that it is endemic in the nature of contingency agreements that an "attorney taking a case on a contingent basis may earn a large fee for a very few hours; however, that same attorney also takes the risk that he will receive no fee, regardless of the number of hours spent on a case." *Ante* at __, slip op. at 18. On the facts of this case, the 20% fee, giving due regard to its contingent nature, certainly provides adequate recompense for the nature and extent of the representation that the appellant provided before the Board.

_____

review, we should grant them as much latitude as possible to make determinations about their representation. I also note that the compromise included ***provisions that allow either the BVA or the Court of Veterans Appeals to review a fee agreement for "reasonableness" -- either upon a request from a party or on the Board's or Court's own initiative. This should provide protection against any overreaching on the part of attorneys.***

134 Cong. Rec. S31461, S31469-70 (1988) (emphasis added).

[27] Although it is true that the client veteran does not challenge the fee and indeed endorses it (R. at 144 (December 1998 letter from veteran)), it is not clear that he has been aware of exactly what the appellant's representation before the RO actually was responsible for achieving.

[28] 134 Cong. Rec. at S31470.

### *4. Basis for Reversal*

A concluding jurisdictional matter: I am concerned about the Court's stating that its reversal of the Board's 30%-to-20% reduction is made "pursuant to 38 U.S.C. § 7263" (*ante* at __, slip op. at 18), rather then the Court's reversing the Board under section 7252(a). I cannot find in section 7263 any authority for the Court to reverse. Rather, section 7263(d) seems to authorize the Court only to "affirm the finding or order of the Board" or to "order a reduction in the fee called for in the fee called for in the agreement".[29] One is left to wonder whether the Court's reference to section 7263 is designed to prevent the Secretary from appealing to the Federal Circuit. *See* 38 U.S.C. § 7263(d) ("[a]n order of the Court under this subsection is final and may not be reviewed in any other Court")

### *D. EAJA Offset/"Same Work"*

As to the majority's concern about our prior caselaw on the offset question, I would, as noted in part II.A., above, prefer that the Court adhere to a full adversarial process with the participation of the parties before the Court overrules our prior precedent. However, I do tend to agree with the Court that the sentences that it quotes from *Fritz v. West*, 13 Vet.App. 190, 194 (1999), *ante* at __, slip op. at 11-12 -- the first reference as a characterization of *Shaw v. Gober*, 10 Vet.App. 498 (1997) -- that seemed to draw the line at the attorney's work involving "obtaining more relief from the Department than what the appellant received from the Court" may be overbroad and should be reexamined. However, the analysis should proceed from an allocation of the hours worked by the attorney between Court and VA representation, as I now tend to believe was correctly argued by the Secretary in *Fritz, supra*, and, if that allocation does not result in a total offset, only then must a comparison be made of the "work" done at the two stages to see if it is essentially "the same" -- as my analysis will show that it clearly was here.

The majority, instead, chooses to adopt a one-size-fits-all holding "that the representation of a claimant in pursuit of a claim at all stages of the adjudication process is the 'same work,' regardless of the tribunal before which it is performed". *Ante* at __, slip op. at 14. I have several serious

---

[29] *Cf. Cox*, 149 F.3d at 1364 ("section 5904(c)(2) only gives the Board limited jurisdiction to review the *reasonableness* of a fee and to *reduce* the fee" (emphasis added)). In this regard, it is noteworthy that section 7263(d) is very similar to section 5904(c)(2) of title 38, U.S. Code.

problems with this holding. First, by way of preface, although section 506(c) of the Federal Courts Administration Act of 1992[30] [hereinafter FCAA § 506(c)], may not be directly applicable, as the Board concluded it was, the majority adopts verbatim (*ante* at __, slip op. at 10-11) the analysis from *Shaw*, 10 Vet.App. at 504, that the policy of the FCAA § 506(c) prohibition against double payment for the same work applies equally to non-direct-payment fee agreements through the "unreasonable"-fee prohibition embodied in 38 U.S.C. §§ 5904(c)(2) and 7263(d). Hence, it must be borne in mind that the Court's opinion here would apply with full force to a 20% ***direct***-payment contingency-fee agreement under section 5904(d), and my ensuing analysis proceeds, therefore, as though FCAA § 506(c) were being applied directly in this case. Thus, the impact of the Court's holding on this point is greater than might be apparent upon initial examination.

It is especially problematic, therefore, that the Court's opinion eschews any analysis of the nature of the ***actual*** work performed by the attorney before the Court in comparison to the work performed before the BVA and merely, *ipse dixit*, declares them "the same" as a matter of law "for the purposes of EAJA" because the work here and below relate to the "same claim". *Ante* at __, slip op. at 13-14. This conclusion seems to me to read "same work" out of the statute; that is, the result reached would be the same if Congress had just provided for an offset ***whenever*** EAJA fees are awarded and a contingency fee is paid in connection with the same claim. But the statute does not say that. Moreover, Congress did not say that in the virtually identical SSA language enacted in 1985 in the EAJA extension and amendments in which section 3 expressly prohibited "the claimant's attorney [from] receiv[ing] fees for the same work under both [SSA direct-payment provision from

---

[30] Pub. L. No. 102-572, § 506(c), 106 Stat. 4506, 4513 (1992) (found at 28 U.S.C. § 2412 note). That provision states:

> (c) FEE AGREEMENTS. – Section 5904(d) of title 38, United States Code, shall not prevent an award of fees and other expenses under section 2412(d) of title 28, United States Code. Section 5904(d) of title 38, United States Code, shall not apply with respect to any such award but only if, where the claimant's attorney receives fees for the same work under both section 5904 of title 38, United States Code, and section 2412(d) of title 28, United States Code, the claimant's attorney refunds to the claimant the amount of the smaller fee.

a past-due award] . . . and [the EAJA unless] . . . the claimant's attorney refunds to the claimant the amount of the smaller fee."[31]

The opinion's principal stated justification for the interpretive leap of equating "same work" with "same claim" seems to be a citation to *Brown v. Gardner*,[32] but *Gardner* has applicability only when there is some interpretive doubt.[33] I don't see any in the statutory language. But if there is some, then I believe that it is incumbent on the Court to explore both the legislative history as well as the caselaw relating to the section 3 provision regarding SSA awards. The majority, however, does not discuss either of these potential sources of enlightenment in rendering the interpretation it has reached out to impose. In addition, the opinion appears largely to ignore the distinction between collecting the fee for work in the Court or for work at the Department, which was emphasized in *In the Matter of the Fee Agreement of Mason*, 13 Vet.App. 79, 86 (1999).

Nevertheless, I do tend to agree with the Court's conclusion as to offset here and that *generally* EAJA fees should be offset when only a remand is won here. Hence, I believe that the fee-agreement provision in question is invalid in that it attempts to make a blanket offset applicable to every *non*award remand and that such a blanket approach violates FCAA § 506(c), which, I believe, calls for a fact-specific comparison in each case.

Such a fact-based analysis would accomplish the result that the majority apparently seeks, but would do so with*out* resorting to a one-size-fits-all holding. That holding is counterintuitive *because* there are clearly fact circumstances where the work before the Board or RO will not be "the same" as the work before the Court (such as when the attorney argues only for a reasons-or-bases or duty-to-assist remand here and does entirely different work below in arguing as to the weighing of the evidence before VA on remand, perhaps most clearly illustrated where the application of the

---

[31] Pub. L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) (found at 28 U.S.C. § 2412 note).

[32] *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994) ("interpretive doubt is to be construed in the veteran's favor").

[33] "[W]hen a statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." *Hartford Underwriters v. Union Planters*, 120 S.Ct. 1942, 1947 (2000) (citations and internal quotation marks omitted). "When the words of a statute are unambiguous, . . . this first canon is also the last: judicial inquiry is complete." *Connecticut National Bank v. Germain*, 503 U.S. 249, 254 (1992) (citations and internal quotation marks omitted). "If the statute's meaning is clear, we will not consider legislative history." *United States v. One 1997 Toyota Land Cruiser*, 248 F.3d 899, 903 (9th Cir. 2001).

duty to assist on remand results in new medical evidence that could not have been part of the argument in the Court but must be argued from on remand).[34] Even were an attorney to seek to align the contingency fee only with representation below (for example, by a fee agreement providing that there will be no contingency fee paid for representation in the Court unless a benefits award is obtained *from the Court*),[35] the inquiry would *still* be whether the attorney is getting paid that fee for "the same work" for which he had been paid an attorney fee under the EAJA.

However, we need not here concern ourselves with any question as to whether any part of the 30% contingency fee should be considered as having been earned by the appellant's representation before this Court, because, on the facts of this case, the answer is clear, from a comparison of the February 1998 joint motion for remand (R. at 98-103) and the June 2, 1998, letter to the Board (R. at 105-09), that the work below was the "same work" and that an offset would occur under the terms of FCAA § 506(c) (for a direct-payment section 5904(d) fee agreement) or its underlying policy as embodied in the reasonable-fee limitation in sections 5904(c)(2) and 7263(d). Because we know that the attorney did at least $2,400.00 worth of work here, it follows, with one caveat, that $2,400.00 of the $62,000.00 must be offset. The caveat is that any fees-for-fees work[36] included in the EAJA award perhaps should not be offset; that matter was expressly left open in

---

[34] Consider the following hypothetical: Representation in the Court of 20 hours results in a duty-to-assist remand for which a $3,000 EAJA award is made. The representation below occurs at the RO and BVA, and, after much development of the evidence and a denial by the RO, results in the award of service connection with a 50% rating (awarded by the RO after the BVA awards service connection). The attorney works 90 hours in the 3 proceedings before VA, and a past-due benefits award of $40,000 is ultimately made. There is a 20% direct-payment fee agreement, and thus there would be a contingency fee of $8,000. How much of the $3,000 EAJA award is to be offset in consideration of the work performed before the Court? If the work performed below is in fact entirely different from the work performed before the Court (as *is* the case because the litigation involved only whether the Board had failed to require that the duty to assist be properly executed and the work below consisted totally of the development and marshaling of evidence and the argument made from the evidence for the award of service connection and the highest possible rating), then there should be no offset of the $3,000 EAJA fee award. If, however, the attorney had expended 10 hours on the same subject that he had argued to the Court, then one-half of the $3,000 awarded, for 20 hours of work before the Court, would be offset and returned to the client.

[35] Indeed, this *is* what the appellant appears to have contended to the Board in his December 11, 1998, letter to the Board, as quoted at the end of note 20, *supra*.

[36] *See generally Swiney v. Gober*, 14 Vet.App. 65, 75 (2000) (awarding EAJA fees for litigating EAJA fee application because amount of "fees for fees" sought was reasonable); *McNeely (Alan) v. West*, 12 Vet.App. 162, 164 (1999) (same).

*Shaw*, 10 Vet.App. at 504-05.  It is still one more matter that the opinion needs to deal with because the Court orders that the **total** EAJA fee be offset and, according to the EAJA application in the underlying case of *Weatherspoon v. West*, U.S. Vet. App. No. 97-675, the EAJA fees awarded did include two hours for preparing the fee application itself.  February 25, 1998, EAJA Application, Exhibit 2 at 3.

Again, I stress that the one-size-fits-all holding laid down by the majority is largely unnecessary to achieve the policy result that the majority apparently seeks (of not letting attorneys -- by virtue of cleverly drafted fee agreements -- escape offset, i.e., recover double payment for the same work).[37]  It is certainly unnecessary on the facts of this case, and one would think that the majority, in accordance with the maxim in *Best v. Principi*,[38] would want to determine first whether the case can be decided on a more narrow basis.  Accordingly, although I would agree with the majority that the total amount of the EAJA award in this case for the merits representation (putting to one side the two hours reimbursed for fees for fees) should be offset against the permissible fee paid by the veteran under the fee agreement, I believe that the one-size-fits-all holding reached by the Court (requiring total EAJA offset in all cases) is unsustainable on the face of the statutory language and especially in light of the dearth of analysis and authority provided for it in the majority opinion.

### III.  Conclusion

For the foregoing reasons, I am unable to join in the opinion of the Court, although I agree generally with the result reached on the facts of this case on the EAJA-offset question.   As to the Board's decision reducing the 30% contingency fee to 20%, I disagree with the Court's reversal of that portion of the Board decision.

---

[37]  *Ante* at __, __, slip op. at 13, 16 (referring to "drafting of a fee agreement which might unintentionally or intentionally deprive a veteran of his [sic] rights under the law"; referring to "artfully or inartfully drafted contingency fee agreement which could circumvent the letter and spirit of EAJA").

[38]  *See supra* note 4.

KRAMER, *Chief Judge*, dissenting: I cannot concur in the majority opinion because it fails to address several requisite issues. Although I am not in agreement with several matters in Judge Steinberg's separate opinion, I note that he and I are in substantial agreement as to many of the matters discussed in this opinion.

First, the majority holds that the Court has jurisdiction under 38 U.S.C. § 7252(a) to review the reasonableness of a fee agreement under 38 U.S.C. § 7263(d) that the Board of Veterans' Appeals (BVA or Board) has reviewed sua sponte under 38 U.S.C. § 5904(c)(2). *Ante* at __, slip op. at 8-9. Pursuant to the Veterans' Judicial Review Act, Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) (VJRA), this Court has jurisdiction over only those appeals in which a Notice of Disagreement (NOD) was filed on or after November 18, 1988, as to an action of a VA agency of original jurisdiction (normally a VA regional office (RO)) that underlies the BVA decision that an appellant seeks to appeal. *See Velez v. West*, 11 Vet.App. 148, 157 (1998). Although Congress has expressly recognized one exception to this NOD requirement, that exception is not applicable in this case. *See* The Revision of Veterans' Benefits Decisions Based on Clear and Unmistakable Error Act, Pub. L. No. 105-111, § 1(c)(2), 111 Stat. 2271 (1997) (found at 38 U.S.C. § 7251 note) (notwithstanding VJRA, Court has jurisdiction over claims, pending or filed on or after November 21, 1997, of clear and unmistakable error in BVA decisions pursuant to 38 U.S.C. § 7111). Because the record on appeal in this case contains no jurisdiction-conferring NOD, I believe that there is a legitimate question as to whether this Court in fact does have jurisdiction. The majority appears to allow for jurisdiction here without a jurisdiction-conferring NOD on the ground that the Court has "additional authority" under section 7263(d). *Ante* at __, slip op. at 9. Although the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has stated that section 5904(c)(2) gives the Board limited jurisdiction to review the reasonableness of a fee, *see Cox v. West*, 149 F.3d 1360, 1364 (Fed. Cir. 1998), this Court has never expressly considered whether without any NOD the Court has jurisdiction under section 7263(d) over such a BVA decision. Nor does the majority here address that important jurisdictional matter.

Second, in the BVA decision here on appeal, the Board determined in the first instance that the appellant was eligible under 38 U.S.C. § 5904(c)(1) to receive an attorney fee (Record (R.) at 3-4) and then proceeded to consider the reasonableness of the fee (R. at 4-8). This Court has

36

held that the Board does not have jurisdiction to consider eligibility under 38 U.S.C. § 5904(c)(1) unless an RO has first made that determination. *See Carpenter v. Gober*, 14 Vet.App. 195 (2000) (per curiam order) (holding that neither Board nor Court has original jurisdiction under section 5904(c)(2) to consider eligibility of appellant for attorney fees), *granting mot. for recons. in In the Matter of the Fee Agreement of Carpenter*, No. 97-676, 1999 WL 978670 (Vet. App. Oct. 15, 1999). *But see In the Matter of the Fee Agreement of Stanley*, 10 Vet.App. 104, 105 (1997) (in case where Board had sua sponte raised under 38 U.S.C. § 5904(c)(2) issue of eligibility under 38 U.S.C. § 5904(c)(1), Court stated that Court had jurisdiction under 38 U.S.C. §§ 7263(d) and 7266(a)). In addition, this Court has stated that any review of reasonableness would be premature until eligibility is first determined. *See Snyder v. Gober*, 14 Vet.App. 154, 167 (2000), *mot. for recons. filed* (Nov. 13, 2000). Assuming that there is a sequential relationship between eligibility and reasonableness, I believe that before the Court can address reasonableness, it must first address the underlying threshold issue of eligibility. In reaching its decision, however, the majority fails to address this matter.

Third, I am concerned that the majority, without adequate analysis as to why it is appropriate, appears to reverse the Board in the context of 38 U.S.C. § 7263(d). The Court states that it is reviewing under 38 U.S.C. § 7263(d) the BVA decision that reduced the attorney fees on reasonableness grounds but is reversing that decision under 38 U.S.C. § 7252(a). *Ante* at __, slip op. at 18. Although section 7252(a) provides the Court with the authority to "reverse a decision of the Board," section 7263(d) provides that "[i]n reviewing a fee agreement . . . under section 5904(c)(2), the Court may affirm the finding or order of the Board and may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable," 38 U.S.C. § 7263(d). In that regard, the Federal Circuit has clearly stated that the Court's authority to review fee agreements under section 7263(d) "is strictly limited by the language of the statute." *In the Matter of the Fee Agreement of Wick*, 40 F.3d 367, 371 (Fed. Cir. 1994) (*Fee Agreement of Wick*); *cf. Cox*, 149 F.3d at 1364 (section 5904(c)(2) provides Board with limited jurisdiction to review reasonableness of fee and to reduce fee).

Fourth, the majority makes a holding that overrules previous Court precedent, *see Fritz v. West*, 13 Vet.App. 190, 194-95 (1999), as to the meaning of "same work" in the context of whether

to offset the attorney fees with the fees awarded under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). As to that offset determination, the majority, in my opinion, fails to provide adequate analysis and legal support for its holding. For example, the majority's discussion abruptly moves from the terms of the fee agreement to a conclusory holding that "same work" means "same claim" without making any connection between the terms and the holding. *Ante* at __, slip op. at 13-14. Moreover, the majority makes that holding, ostensibly based on the veterans benefits precept that any interpretive doubt as to the meaning of the statute--that is, congressional intent as to "same work"--must be resolved in favor of the veteran, without discussing pertinent legislative history. In that regard, I note that the "same work" language that applies to this Court, *see* the Federal Courts Administration Act of 1992 (FCAA), Pub. L. No. 102-572, § 506, 106 Stat. 4506, 4513 (1992) (found at 28 U.S.C. § 2412 note), is exactly the same (except for the attorney-fee statutes affected, 38 U.S.C. § 5904(d) versus 42 U.S.C. § 406(b)) as the "same work" language that applies to attorney fees awarded in Social Security Act cases, *see* the Equal Access to Justice Act, Extension and Amendment, Pub. L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) (found at 28 U.S.C. § 2412 note). The legislative history supporting the "same work" language as to Social Security Act cases provides in pertinent part:

> The bill clarifies that an EAJA award in Social Security cases is not precluded by the fee provision in the Social Security Act, 42 U.S.C. § 406(b). The bill also prohibits attorneys from collecting both EAJA fees and § 406(b) fees in the same case. In the situation of dual entitlement, the attorney must refund the amount of the smaller fee to the claimant.
>
> . . . .
>
> . . . This provision and related ones, when read together, allow a court or the Secretary to authorize payment of attorney fees and related expenses under the [EAJA], notwithstanding the provisions in the Social Security Act. However, an attorney collecting attorney fees under the EAJA would have to use such fees to reduce the liability, if any remains, of the claimant for any portion of the past-due benefits. Courts and the Secretary would be expected to scrutinize such awards to ensure that the attorney is reducing the liability of the claimant so that the claimant is the primary beneficiary of the EAJA award.
>
> . . . .

It is the Committee's intent . . . that the EAJA award should be used as a set off to reduce the payment which the claimant would otherwise owe the attorney. Thus, under the amendment an attorney for a Social Security . . . claimant would be precluded from receiving both EAJA and Social Security Act fees. Without this amendment it was argued, "double dipping" was possible. Such double payments are inappropriate and deprive[] the plaintiff of the benefits intended by EAJA. Because the Committee is aware of the important function served by counsel in these cases, the Committee permits the attorney to seek recovery under both authorizations. The attorney, however, may keep the larger fee, but must return the amount of the smaller fee to the claimant.

H.R. Rep. No. 99-120, Part I, at 7, 19-20 (1985) (Background; Explanatory Statement), *reprinted in* 1985 U.S.C.C.A.N. 132, 135-36, 148-49. Therefore, although the majority view of offset, assuming it can properly reach that issue, may be correct, *see id.*, I cannot support its conclusory pronouncement. I note also that the majority has not addressed the question of whether the EAJA offset should include any supplemental EAJA awards of fees for fees, *see McNeely v. West*, 12 Vet.App. 162, 163-64 (1999) (per curiam order) (courts are "permitted to allow payment for time spent litigating the fee applications").

Fifth, in determining error in the BVA reduction of the contingent attorney fee from 30% to 20%, the majority has not addressed fully either the applicable VA regulation, 38 C.F.R. § 20.609(e) (2000), or all of the pertinent facts of this case. Section 20.609(e) includes eight factors to be considered in determining whether fees are reasonable. In rendering its opinion, the majority addresses only four of those eight; the majority fails to consider other appropriate factors, *see ante* at __, slip op. at 18, such as "[t]he extent and type of services the representative performed," "the amount of time the representative spent on the case," and "[r]ates charged by other representatives for similar services," 38 C.F.R. § 20.609(e)(1), (4), (7). And, in determining that "the case was complex; the attorney was quite competent; [and] he achieved a great deal of success for his client," the majority fails to consider that the Board found clear and unmistakable error (as the basis of its award) on a basis other than that which the appellant had argued (*compare* R. at 101-02 *with* R. at 120-25), *see ante* at __, slip op. at 18.

Finally, I firmly believe that attorneys make significant contributions to this Court's review of appeals from BVA decisions. That said, the issues generated by the statutory scheme, through which appellants' attorneys are compensated, over time have become increasingly complex and have

resulted in a substantial degree of confusion. *See* 28 U.S.C. § 2412(d); 38 U.S.C. §§ 5904, 7263(c), (d); FCAA § 506; VJRA §§ 402, 403. That complexity and confusion have caused the Federal Circuit, this Court, and VA, as well as the appellants' attorneys themselves, to devote an inordinate amount of time and resources to litigating these issues. Accordingly, as may be obvious from the following cases and the extraordinary judicial history of some of them (seven of the ten cases are still pending either on appeal before the Federal Circuit or on postdecisional matters before this Court), it may be time for Congress to examine the present system to determine whether it should be modified in whole or in part. *See, e.g., Fee Agreement of Wick*, 40 F.3d at 373, *vacating in part In the Matter of the Fee Agreement of Smith*, 4 Vet.App. 487 (1993), *mot. for en banc rev. denied*, 5 Vet.App. 307 (1993) (en banc) (with dissenting opinion); *Cullens v. Gober*, 14 Vet.App. 234, 239 (2001) (en banc) (holding that, in cases where parties have settled merits issue, Court will look beyond settlement agreement and will consider record on appeal when determining EAJA substantial-justification question; with concurring and dissenting opinions), *supplemental EAJA application filed* (Mar. 14, 2001); *Snyder*, 14 Vet.App. at 168 (vacating BVA decision for lack of jurisdiction, denying petition for payment of attorney fees under section 5904(d), and denying for lack of jurisdiction Secretary's motion to review fee agreement), *mot. for en banc rev. filed* (Nov. 13, 2000); *Cox v. Gober*, 14 Vet.App. 148 (2000) (reversing BVA decision and ordering VA to pay attorney fees pursuant to section 5904(d) where attorney fees had been paid erroneously to veteran), *on remand from Cox*, 149 F.3d at 1366, *vacating in part In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361 (1997), *mot. for recons. filed* (Nov. 7, 2000); *Scates v. West*, 13 Vet.App. 304 (2000) (en banc) (granting motion for full Court review and withdrawing panel opinion), *decided sub nom. Scates v. Gober*, 14 Vet.App. 62 (2000) (en banc) (as to section 5904(d) case, vacating BVA decision for lack of BVA jurisdiction and dismissing appeal for Court's lack of jurisdiction), *appeal filed sub nom. Scates v. Principi*, Fed. Cir. No. 00-7033 (Nov. 16, 2000); *Fritz v. West*, 13 Vet.App. 190, 196 (1999) (holding EAJA determination in abeyance pending appellant's "verification as to whether or not he approves of submission of EAJA application"), 13 Vet.App. 439, 441 (2000) (granting EAJA application and denying supplemental EAJA application for fees for fees regarding Court's sua sponte review of fee agreement for reasonableness), *appeal filed sub nom. Fritz v. Principi*, Fed. Cir. No. 00-7139 (June 14, 2000); *Barrera v. West*, 13 Vet.App. 139, 140

(1999) (based on res judicata, denying EAJA fees for work done before Federal Circuit), *mot. for en banc rev. denied*, 13 Vet.App. 418 (2000) (en banc) (with concurring and dissenting opinions), *appeal filed sub nom. Barrera v. Principi*, Fed. Cir. No. 00-7115 (Apr. 18, 2000); *In the Matter of the Fee Agreement of Mason*, 13 Vet.App. 79, 86 (1999) (holding that "where an attorney successfully represents a VA claimant before this Court and has filed a qualifying attorney-client fee agreement which directs payment by the Secretary from an award of past-due benefits awarded on the basis of the claim filed with VA, the Secretary is obligated to pay directly to the attorney 20% of the past-due benefits awarded on the basis of the claim or application for benefits *underlying the issues successfully appealed to this Court*" rather than on basis of work done before VA), *appeal filed sub nom. Mason v. Principi*, Fed. Cir. No. 00-7113 (May 21, 2000); *Bazalo v. West*, 9 Vet.App. 304 (1996) (en banc) (holding that there are four elements that must be met within 30 days of when judgment is final in order for Court to have jurisdiction over EAJA application), *mot. for recons. denied*, 10 Vet.App. 154 (1997) (en banc), *rev'd*, 150 F.3d 1380, 1383 (Fed. Cir. 1998) (holding that at least jurisdictional element of statement that appellant's net worth does not exceed $2,000,000 is subsumed in appellant's averment of eligibility for EAJA award) (with dissenting opinion); *Shaw v. Gober*, 10 Vet.App. 498, 503-05 (1997) (stating that "double-payment proscription would have no application to the payment of fees under the EAJA and under the fee agreement where the legal work done in connection with those fees is not the same"; holding unreasonable on its face a fee agreement that may be read as precluding an offset where Court remands with direction to Board to award benefits).